797 P.2d 863

**BECO CONSTRUCTION COMPANY, INC., an Idaho corporation, Plaintiff–Appellant,**

v.

**BANNOCK PAVING COMPANY, INC., an Idaho corporation, and Jack B. Parson Companies, a Utah corporation authorized to conduct business in Idaho, Defendants–Respondents.**

**No. 18087.**

Supreme Court of Idaho.

Aug. 30, 1990.

Fuller and Carr, Idaho Falls, for plaintiff-appellant. Mark R. Fuller argued.

Racine, Olson, Nye, Cooper and Budge, Pocatello, for defendants-respondents. John A. Bailey argued.

HERNDON, Justice pro tem.

This case arises in quasi contract. Appellant Beco Construction Company, Inc. (Beco) and respondent Bannock Paving Company, Inc. (Bannock Paving), a wholly owned subsidiary of respondent Jack B. Parson Companies, submitted written bids

on a subcontract under a Small Business Administration (SBA) set-aside program to benefit contractors having annual average receipts of less than seventeen million dollars ($17,000,000.00) for the preceding three (3) fiscal years. 13 C.F.R. 121.1 (1985). Bannock Paving was awarded the contract as low bidder, but did not qualify as a small business. Beco, the second low bidder, brings this action and alleges fraud and unjust enrichment, and now appeals the summary judgment granted in favor of Bannock Paving.

We affirm.

## I. STATEMENT OF FACTS AND PROCEEDINGS

Morrison–Knudsen Company (M–K), the prime contractor for general construction for the Department of Energy (DOE) at the Idaho Nuclear Engineering Laboratory (INEL), on July 10, 1985, issued a Request for Proposals (RFP) on a project involving road repairs and the construction of a helicopter pad at the INEL.

The RFP, entitled "FY–84 INEL Road Upgrade Line Item Construction Project" solicited "a firm fixed unit price proposal" and specified that the contract was a small-business set-aside, as authorized by the Small Business Act, 15 U.S.C. § 631 et seq., and its implementing regulations.

The RFP also set forth a tight schedule for the submission of offers and completion of the work. The bid documents provided for the bid opening on July 31, 1985, the award of the contract and notice to proceed by August 1, 1985, and completion of the work by September 15, 1985.

Beco and Bannock Paving attended the pre-bid conference and tour of the proposed projects in July, 1985.

Both Beco and Bannock Paving self certified that they were small businesses, as required by SBA regulation.

The bids were opened at 3:30 p.m. on July 31. Bannock Paving bid $1,203,039.30 and Beco $1,221,875.00. At 8:05 a.m. on August 1, 1985, M–K notified by telephone Bannock Paving that it had been awarded the contract. Written notice of the award was delivered to Bannock Paving on August 2, 1985.

On August 1, 1985, Beco learned that Bannock Paving might not qualify as Small Business concern because it was a wholly owned subsidiary of Jack B. Parsons Companies, with revenues exceeding the SBA limit. Beco also discovered a mathematical error in its own bid computation and that its bid was actually $1,171,875.00.

Beco informed M–K of both discoveries at noon on August 2, 1985. However, M–K told Beco that the contract had already been awarded to Bannock Paving.

Beco submitted a written protest to the General Accounting Office of the United States Government (GAO), but Bannock Paving had already signed a contract with M–K and had begun work. The DOE report on Beco's bid protest recommended that the GAO deny Beco's challenge. The GAO then denied Beco's protest. Beco sought relief through the various administrative agencies, and then filed suit in Federal Court for the District of Idaho. The Federal Court granted Summary Judgment to Bannock Paving and dismissed the case. The Federal Court ruled that it lacked diversity jurisdiction, and no private cause of action existed under the Small Business Act. Beco then brought this action.

Meanwhile, Bannock Paving completed the project and received the contract payment.

## II. SUMMARY JUDGMENT

■ Motions for summary judgment should only be granted when no genuine issue of material fact exists after the pleadings, depositions, admissions and affidavits have been construed most favorably to the opposing or non-moving party, and the moving party is entitled to judgment as a matter of law. *Dekker v. Magic Valley Regional Medical Center*, 115 Idaho 332, 333, 766 P.2d 1213, 1214 (1988); *Corbridge v. Clark Equipment Co.*, 112 Idaho 85, 86, 730 P.2d 1005, 1006 (1986); *Anderson v. City of Pocatello*, 112 Idaho 176, 179, 731 P.2d 171, 174 (1986); *Boise Car & Truck Rental Co. v. Wakco, Inc.*, 108 Idaho 780,

783, 702 P.2d 818, 821 (1985); Idaho Rules of Civil Procedure (I.R.C.P.) 56(c). Liberal construction of the facts in favor of the non-moving party requires the court to draw all reasonable factual inferences in favor of the non-moving party. *Williams v. Blakley*, 114 Idaho 323, 324, 757 P.2d 186, 187 (1988); *Blake v. Cruz*, 108 Idaho 253, 255, 698 P.2d 315, 317 (1985).

## A. PREEMPTION

■ The trial court held that the Small Business Act does not preempt state common law actions of fraud and unjust enrichment since such actions are recognized in Idaho. We agree.

In *Iconco v. Jensen Construction Co.*, 622 F.2d 1291 (8th Cir.1980), the 8th Circuit Court of Appeals outlines the Congressional intent behind the Small Business Act [1]:

> Congress has two primary goals in mind: First, it wanted to help small businesses by assuring that they receive a fair portion of government contracts so that they may compete on an equal footing with large concerns; this goal of preservation and expansion of competition was considered "basic ... to the security of this nation." 15 U.S.C. § 631....
>
> Congress's second primary goal was to assure that the government contracts were performed in a timely and competent manner. And to the extent that the awarding of contracts to small business is compatible with getting the job properly and at reasonable cost to the public, setting aside contracts for small business accomplishes this goal but Congress did not intend to assist small business at all costs, and authorize contracting agencies to reject all bids, even though submitted by qualified small businesses, if necessary to the public interest. 10 U.S.C. § 2305(c).

*Id.* at 1298–99.

Thus, furtherance of congressional goals in this area does not require the application of the preemption doctrine.

As the 11th Circuit Court of Appeals states in *Automated Medical Laborato-ries, Inc. v. Hillsborough County*, 722 F.2d 1526 (11th Cir.1984):

> The rationale underlying the pre-emption doctrine is that the Supremacy Clause invalidates state laws that "interfere with or are contrary to, the laws of congress...." *Gibbons v. Ogden*, 9 Wheat. 1, 211, 6 L.Ed. 23 (1824). Pre-emption of state law by federal statute or regulation is not favored in the absence of persuasive reasons. *Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 317, 101 S.Ct. 1124, 1130, 67 L.Ed.2d 258 (1981); *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). The touchstone of a pre-emption analysis is congressional intent, which may be either express or implied. *Fidelity Federal Savings & Loan Association v. De La Cuesta*, 458 U.S. 141, 151, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664, 675 (1982); *Jones v. Rath Packing Co.*, 430 U.S. 519, 529, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977); *Howard v. Uniroyal, Inc.*, 719 F.2d 1552 at 1555–56 (11th Cir.1983). In *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. at 143, 83 S.Ct. at 1218, 10 L.Ed.2d 248, the Supreme Court stated a two-pronged analysis for pre-emption claims: "Does either the nature of the subject matter, ... or any explicit declaration of congressional design to displace state regulation, require [the challenged legislation] to yield to the federal [regulatory scheme]?"

*Id.* at 1530.

Here, neither the subject matter nor any explicit declaration of congressional design operates to displace State regulation requiring the Idaho causes of action for unjust enrichment and fraud to yield to the federal legislation.

## B. UNJUST ENRICHMENT

■ The district court held that existing Idaho law "fails to recognize a cause of action under either the theory of fraud or unjust enrichment where the alleged in-

---

1. 15 U.S.C. 631 et seq.

jured party has no relationship with the alleged injuring party." Therefore, the district court concluded that Bannock Paving was entitled to summary judgment.

Beco argues on appeal, however, that it should be allowed to recover under the theory of unjust enrichment for the benefit received by Bannock Paving from the set-aside contract even though it did not confer any benefit either directly or indirectly to the alleged unjustly enriched party.[2]

In *Continental Forest Products, Inc. v. Chandler Supply Co.*, 95 Idaho 739, 518 P.2d 1201 (1974), this Court observes that the doctrine of unjust enrichment sounds in implied in law contract or quasi contract and explains:

> Basically the courts have recognized three types of contractual arrangements. Restatement of Contracts, § 5, comment a, at p. 7 (1932); 3 Corbin on Contracts, § 562 at p. 283 (1960). First is the express contract wherein the parties expressly agree regarding a transaction. *Alexander v. O'Neil*, 77 Ariz. 91, 267 P.2d 730 (1954). Secondly, there is the implied in fact contract wherein there is no express agreement but the conduct of the parties implies an agreement from which an obligation in contract exists. *Clements v. Jungert*, 90 Idaho 143, 408 P.2d 810 (1965). The third category is called an implied in law contract, or quasi contract. However, a contract implied in law is not a contract at all, but an obligation imposed by law for the purpose of bringing about justice and equity without reference to the intent or the agreement of the parties and, in some cases, in spite of an agreement between the parties. *Hixon v. Allphin*, 76 Idaho 327, 281 P.2d 1042 (1955); *McShane v. Quillin*, 47 Idaho 542, 277 P. 554 (1929); 3 Corbin on Contracts, § 561, at p. 276 (1960). It is a non-contractual obligation that is to be treated procedurally *as if* it were a contract, and is often referred to as quasi contract, unjust enrichment, implied in law contract or restitution.

> . . . .

> As the essence of a contract implied in law lies in the fact that the defendant has received a benefit which it would be inequitable for him to retain, it necessarily follows that the measure of recovery in a quasi-contractual action is not the actual amount of the enrichment, but the amount of enrichment which, as between the two parties it would be unjust for one party to retain. *Hixon v. Allphin, supra;* 66 Am.Jur.2d, Restitution and Implied Contracts, at p. 946 (1973); *Meehan v. Cheltenham*, 410 Pa. 446, 189 A.2d 593 (1963); *Farmers National Bank of Bloomsburg v. Albertson*, 203 Pa.Super. 205, 199 A.2d 486 (Pa.1964).

*Id.* at 743, 518 P.2d at 1205 (emphasis in original). See also *Idaho Lumber, Inc. v. Buck*, 109 Idaho 737, 710 P.2d 647 (Ct.App. 1985).

*Hertz v. Fiscus*, 98 Idaho 456, 567 P.2d 1 (1977) further states:

> The essence of the quasi-contractual theory of unjust enrichment is that the defendant has received a benefit which would be inequitable to retain at least without compensating the plaintiff to the extent that retention is unjust. *Continental Forest Products v. Chandler, supra; Bair v. Barron*, 97 Idaho 26, 539 P.2d 578 (1975). *Cf. Bastian v. Gifford*, 98 Idaho 324, 563 P.2d 48 (1077).

*Id.* at 457, 567 P.2d at 2; *Buck, supra.*

*Gillette v. Storm Circle Ranch*, 101 Idaho 663, 619 P.2d 1116 (1980) adds:

> Unjust enrichment is an equitable doctrine and is inapplicable where the plaintiff in an action fails to provide the proof necessary to establish the value of the benefit conferred upon the defendant.

*Id.* at 667, 619 P.2d at 1120. *See also Brown v. Yacht Club of Coeur d'Alene Ltd.*, 111 Idaho 195, 722 P.2d 1062 (Ct.App. 1986).

Both parties cite Idaho case law to support their arguments on unjust enrichment. These cases focus on one party (usually the plaintiff) giving benefit to the other party (usually the defendant). In each case the

---

**2.** Beco states the question in its appellant brief: "Can Beco recover a benefit which it did not personally convey to Bannock Paving." Appellant's Brief at 15.

unjust enrichment or quantum meruit flows from the plaintiff to the defendant, *i.e. Gillette v. Storm Circle Ranch, supra* (lessee harvested fall crop that leaser had planted and then planted the next crop, but before it could be harvested the leaser sold the property); *Hertz v. Fiscus, supra* (tenant remodeled restaurant-lounge business and then the relationship soured and the landlord took possession of the business); *Continental Forest Products, Inc. v. Chandler Supply Co., supra* (lumber wholesaler ordered and received two carloads of plywood from a different lumber broker than the one from which the order was placed); *Smith v. Smith,* 95 Idaho 477, 511 P.2d 294 (1973) (relatives brought suit to quit title to property and to determine the individual interests in the property); *Brown v. Yacht Club of Coeur d'Alene, Ltd., supra* (purchaser entitled to recover reliance damages from seller on a real estate contract); *Pichon v. L.J. Broekemeier, Inc.,* 108 Idaho 846, 702 P.2d 884 (Ct.App. 1985) (vendor of real estate brought action to recover damage caused by purchaser in default); *Idaho Lumber, Inc. v. Buck, supra* (owner of rented property was enriched by the remodeling accomplished at the request of the lessee by the contractor).

Beco argues that the equitable principle of unjust enrichment does not require the plaintiff and the defendant to have any other relationship beyond the nexus that one party may not unjustly enrich itself at the expense of the other. Beco relies on *Smith v. Smith, supra; McKay Construction Co. v. Ada County Board of County Commissioners,* 96 Idaho 881, 883, 538 P.2d 1185 (1975); and *Hixon v. Allphin,* 76 Idaho 327, 333, 281 P.2d 1042 (1955); *Olsen v. Country Club Sports, Inc.,* 110 Idaho 789, 718 P.2d 1227 (Ct.App.1985), for this general proposition. However, in each of these cases the plaintiff and defendant had a contractual relationship or a claim to real property, which were the underlying reasons for the unjust enrichment or quasi contract claims between the parties.

Beco specifically points to *Neilson & Co. v. Cassia & Twin Falls County Joint Class A School District Number 151,* 96 Idaho 763, 536 P.2d 1113 (1975). However,

*Neilson & Co.,* is not an unjust enrichment action. In *Neilson & Co.,* the second low bidder filed an action and recovered bid preparation costs from the school districts (not the low bidder) which accepted a bid and awarded a contract in violation of an Idaho statute. Beco, on the other hand, seeks to recover damages from the "apparent low bidder" Bannock Paving and not from M–K the entity that awarded the contract.

Beco also relies upon *Pichon v. L.J. Broekemeier, Inc.,* 108 Idaho 846, 702 P.2d 884 (Ct.App.1985) (a vendor of real estate brought an action to recover damage caused by purchaser in default.) However, the unjust enrichment recovery in *Pichon, supra,* was based on an assumed contractual relationship (a direct relationship) rather than benefits which were not personally conveyed from the plaintiff to the defendant (not a direct relationship).

In this case, Beco conferred no direct or indirect benefit on Bannock Paving. Beco and Bannock Paving had no contractual relationship. M–K awarded the contract. M–K and SBA decided that Bannock Paving could keep the contract even though it did not qualify for small business set-aside projects. Even if Bannock Paving had been excluded, the project documents did not require M–K to award the contract to Beco. Beco also admitted an error in its bid. Besides, SBA provides for criminal sanctions but no civil sanctions as such in cases where the low bidder does not qualify for an SBA set aside. This court continues to require for an unjust enrichment recovery that the plaintiff confer some benefit on the defendant which would be unjust for the defendant to retain.

Thus, we affirm summary judgment on the unjust enrichment theory.

### C.  FRAUD

Finally, Beco claims fraud. In *Witt v. Jones,* 111 Idaho 165, 722 P.2d 474, (1986) this court sets forth the elements for a cause of action in Idaho based on fraud:

The elements for a cause of action based on fraud are: (1) a representation; (2) its

falsity; (3) its materiality; (4) speaker's knowledge of its falsity or ignorance of its truth; (5) speaker's intent that it should be acted upon by another person and in manner reasonably contemplated; (6) hearer's ignorance of its falsity; (7) hearer's reliance on truth; (8) hearer's right to rely thereon; and (9) hearer's consequent and proximate injury. *Faw v. Greenwood,* 101 Idaho 387, 389, 613 P.2d 1338, 1340 (1980).

*Id.* at 168, 722 P.2d at 477. Beco must make a *prima facie* case on each element. *Smith v. King,* 100 Idaho 331, 597 P.2d 217 (1979).

Bannock Paving argues that Beco failed to carry its burden of proof to establish fraud. For example, the representation that Bannock Paving was a small business (element no. 1) was not directed to Beco, nor was Beco expected to rely upon it (element no. 5). Since Beco was not the "hearer" as outlined in *Witt, supra,* Beco was not ignorant of the statement's falsity (element no. 6) neither did Beco rely on the representation (element no. 7) nor did it have a right to rely on the representation (element no. 8). Bannock Paving's self certification was made to M–K and the SBA to induce M–K and the SBA to award the set-aside contract to Bannock Paving. All of Bannock Paving's representations were made to M–K or SBA, but not to Beco.

### III. SUMMARY

In summary, no genuine issue of material fact exists after the record has been construed most favorably to Beco, and Bannock Paving is entitled to judgment as a matter of law. The Federal Small Business Act does not preempt state law causes of action in Idaho for fraud and unjust enrichment, and the appellant did not establish the elements of fraud. The quasi contract benefit in this case did not run from Beco to Bannock Paving; therefore, Beco did not enrich Bannock Paving where it would be unjust for Bannock Paving to retain the benefits of the set aside contract.

Affirmed. Costs to respondents. No attorney fees allowed.

BAKES, C.J., and JOHNSON, BOYLE and McDEVITT, JJ., concur.