IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 35996

FRANK WILLIAM HAUSLADEN JR.,   )
   )
   Petitioner-Appellant,   )
   )
v.   )
   )   **Wallace, April 2010 Term**
SHARI COLENE KNOCHE,   )
   )   **2010 Opinion No. 82**
   Defendant,   )
   )   **Filed: July 8, 2010**
and   )
   )   **Stephen W. Kenyon, Clerk**
   )
JOHN H. SAHLIN,   )
   )
   Judgment Creditor on Appeal-   )
   Respondent.   )

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Charles W. Hosack, District Judge; Hon. Barry Watson, Magistrate Judge.

District court order affirming magistrate court judgment ordering payment of parenting coordinator fees, <u>vacated</u> and <u>remanded</u>.

Frank W. Hausladen, Jr., Coeur d'Alene, appellant *pro se*, argued.

John H. Sahlin, Coeur d'Alene, respondent *pro se*, judgment creditor, argued.

_____

BURDICK, Justice

Appellant Frank William Hausladen, Jr., appeals from the district court's appellate decision affirming the magistrate court's order requiring Hausladen to pay parenting coordinator fees billed by John H. Sahlin. The Idaho Court of Appeals reversed the district court's decision after concluding that the magistrate court's order was in error. This Court granted Sahlin's petition for review of the decision of the Court of Appeals. We find that the district court erred in affirming the magistrate court's judgment ordering Hausladen to pay for Sahlin's services, but

1

we remand for a determination of whether Sahlin is entitled to fees in accordance with Idaho Code § 32-717D(3).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Hausladen and Shari Colene Knoche are the parents of a minor child. Their respective custody rights and child support obligations have been the subject of numerous orders and order modifications over a period of years. On February 2, 2005, the magistrate court entered an Order Modifying Custody, appointing Sahlin to act as a parenting coordinator. The order stated:

> The Court further determines that it would be in the best interest of [the child] that a parenting coordinator be appointed in this particular matter. Pursuant to Idaho Code 32-717(d) [sic], all expenses associated with the parenting coordinator shall be split equally. Pursuant to agreement, the Court hereby appoints John Sahlin as the parenting coordinator in this particular matter.

The Order was otherwise silent as to the powers and duties of the parenting coordinator.

In his role as a parenting coordinator, Sahlin became involved in attempting to resolve various disagreements of the parents. On June 3, 2005, Sahlin sent a letter to both parties in which he approved a schedule for "summer visitation" and recommended that a check received by Hausladen be applied to the child support obligation before any other obligations. Sahlin also sent a letter to the parties on July 8, 2005, discussing disputed payments between the parties and offering to "issue some proclamation of who owes whom what, which you then can appeal or follow as you choose." On September 29, 2005, Sahlin entered an "Order/Recommendation of Parenting Coordinator," which stated that: (1) a judgment entered September 9, 2004, was deemed paid in full and satisfied; (2) Knoche was entitled to seven weeks of summer visitation but had only received six weeks of summer visitation and thus should be allowed one extra "weekend" to occur from October 12 through October 16, 2005; and, (3) although both parties "alluded" to pronouncements by the court modifying the order granting joint legal custody of the child, Sahlin found no indication of such a modification. On October 21, 2005, Sahlin entered a second order/recommendation rescinding the extra weekend ordered in the previous order/recommendation and canceling the "make-up time" until after the hearing Hausladen scheduled regarding his objection to the September 29 order/recommendation.

Hausladen filed a motion pursuant to I.R.C.P. 16(l)(9)(B) on December 12, 2005, and moved the court to:

> [M]ake a specific factual finding of the actions of the court-appointed Parenting Coordinator and legal a ruling [sic] whether John Sahlin, the court-appointed

2

Parenting Coordinator, has: (1) exceeded his mandate; (2) acted in a manner inconsistent with I.R.C.P. 16(l); and (3) demonstrated bias; (4) And, upon finding 1, 2, and 3 above, terminate the Parenting Coordinator's appointment.

On January 11, 2006, the magistrate court entered an order terminating Sahlin's appointment. Hausladen filed a motion for reconsideration on January 24, 2006, on the grounds that the order terminating Sahlin's appointment did not rule upon Hausladen's motion pursuant to I.R.C.P. 16(l)(9)(B) in any way. Hausladen requested that the court reconsider his motion and issue an order on the merits of the motion. The court does not appear to have addressed this motion.

Thereafter, on May 17, 2006, Sahlin filed a Motion for Order to Show Cause and for Entry of Judgment, alleging that Hausladen had failed to pay him for his services and seeking a court order requiring him to do so. Hausladen objected, contending that the order of appointment did not authorize Sahlin to perform any specific duties in his role as parenting coordinator and, therefore, Sahlin was not entitled to payment for his "ultra vires" acts. Following a hearing on June 5, 2006, the magistrate court granted Sahlin's motion. The magistrate court did not directly address Hausladen's legal arguments but simply ruled that Sahlin had performed services and was thus entitled to be paid. *Id*. Accordingly, the magistrate court entered a judgment requiring Hausladen to pay Sahlin $667.50.

Hausladen appealed to the district court, which affirmed the magistrate court in a brief order without a memorandum opinion. Hausladen then appealed to this Court and the case was assigned to the Idaho Court of Appeals, which reversed the district court's decision after finding that the magistrate court's order was in error. Sahlin filed a petition for review, which this Court granted.

## II. ANALYSIS

### A. Standard of Review

"In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court." *State v. Oliver*, 144 Idaho 722, 724, 170 P.3d 387, 389 (2007). "On appeal of a decision rendered by a district court while acting in its intermediate appellate capacity, this Court directly reviews the district court's decision." *In re Doe*, 147 Idaho 243, 248, 207 P.3d 974, 979 (2009). However, to determine whether there was an abuse of discretion, we independently review the record. *Id*. If the magistrate court's findings of fact are supported by substantial and competent evidence and the conclusions of law follow from the

3

findings of fact, and if the district court affirmed the magistrate's decision, we will affirm the district court's decision. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008).

**B. The district court erred in affirming the magistrate court's judgment ordering Hausladen to pay for Sahlin's services.**

On appeal, Hausladen asserts, among other substantive and procedural theories, that the services billed by Sahlin were performed without any authority and thus Hausladen had no obligation to pay. This Court finds that the district court erred in affirming the magistrate court's judgment ordering Hausladen to pay for Sahlin's services, but we remand for a determination regarding what services provided by Sahlin, if any, fall within the authority of I.C. § 32-717D(3) and I.R.C.P. 16(l)(1).

The interpretation of a statute is a question of law over which this Court exercises free review. *State v. Doe*, 147 Idaho 326, 327, 208 P.3d 730, 731 (2009). The purpose of statutory interpretation is to ascertain and "give effect to legislative intent." *Id*. at 328, 208 P.3d at 732. Statutory interpretation begins with the literal words of a statute. *Doe v. Boy Scouts of America*, 148 Idaho 427, __, 224 P.3d 494, 497 (2009). Those words "should be given their plain meaning, unless a contrary legislative purpose is expressed or the plain meaning creates an absurd result." *Id*. If the words of the statute are subject to more than one meaning, it is ambiguous and this Court must construe the statute "to mean what the legislature intended it to mean. To determine that intent, [this Court] examine[s] not only the literal words of the statute, but also the reasonableness of proposed constructions, the public policy behind the statute, and its legislative history." *State v. Doe*, 147 Idaho at 328, 208 P.3d at 732 (quoting *Hayden Lake Fire Prot. Dist. v. Alcorn,* 141 Idaho 388, 398-99, 111 P.3d 73, 83-84 (2005)).

Idaho Code § 32-717D governs the use of parenting coordinators in divorce actions. Subsection (1) of the statute reads, in pertinent part:

> Provided that a court has entered a judgment or an order establishing child custody in a case, the court may order the appointment of a parenting coordinator to perform such duties as authorized by the court, consistent with any controlling judgment or order of a court relating to the child or children of the parties, and as set forth within the order of appointment. . . . At any time during the period of appointment, the court, on its own initiative, or upon request of the parenting coordinator or either party, may hold a status conference to review the continued appointment of the coordinator and/or the status of the case.

I.C. § 32-717D(1). Subsection (3) of the statute then states:

4

In addition to those duties as authorized by the court pursuant to the order of appointment, the responsibilities of a parenting coordinator shall include collaborative dispute resolution in parenting. The parenting coordinator shall act to empower the parties in resuming parenting controls and decision-making, and minimize the degree of conflict between the parties for the best interests of the children.

I.C. § 32-717D(3).

Idaho Rule of Civil Procedure 16(l) provides in greater detail for the appointment of a parenting coordinator. Specifically, I.R.C.P. 16(l)(1) defines "parenting coordinator" as follows:

A Parenting Coordinator under this rule is a qualified neutral person appointed by the court or agreed to by the parties to assist the parties in resolving issues relating to parenting. *The Parenting Coordinator will aid the parties in identifying disputed issues, reducing misunderstandings, clarifying priorities, exploring possibilities for compromise and developing methods of collaboration in parenting.* The Parenting Coordinator will make such decisions or recommendations as may be appropriate when the parties are unable to do so. The goal of the Parenting Coordinator should always be to empower the parents in developing and utilizing adaptive parenting skills so that they can resume the parenting and decision making role in regard to their own children. When it is not possible for the parents to agree, the Parenting Coordinator shall provide only the amount of direction and service required in order to serve the best interest of the child by minimizing the degree of conflict between the parties.

(Emphasis added).

Here, the Order Modifying Custody simply stated in paragraph 5 of the Conclusions of Law:

The Court further determines that it would be in the best interest of [the child] that a parenting coordinator be appointed in this particular matter. Pursuant to Idaho Code 32-717(d) [sic], all expenses associated with the parenting coordinator shall be split equally. Pursuant to agreement, the Court hereby appoints John Sahlin as the parenting coordinator in this particular matter.

Thus, any actions taken by Sahlin were not specifically authorized by the court's order of appointment.

Nevertheless, we find that I.C. § 32-717D(3) and I.R.C.P. 16(l)(1) grant a parenting coordinator certain general powers, and some of Sahlin's actions may therefore have been authorized by statute. Subsection (3) states that the responsibilities of parenting coordinators include collaborative dispute resolution in parenting. Idaho Code § 32-717D(3) then further identifies roles of a parenting coordinator to include empowering the parties in resuming parenting controls and decision-making, and minimizing the degree of conflict between the

5

parties. Thus, a parenting coordinator may engage in acts that empower the parties in developing the tools necessary to engage in effective parenting and decision-making regarding parenting. Idaho Rule of Civil Procedure 16(l)(1) further states that a parenting coordinator will aid the parties in identifying disputed issues, reducing misunderstandings, clarifying priorities, exploring possibilities for compromise, and developing methods of collaboration in parenting. The best interest of the children is the guiding principle for a parenting coordinator's actions under both I.C. § 32-717D and I.R.C.P. 16(l)(1).

However, I.C. § 32-717D and I.R.C.P. 16(l)(1) do not authorize a parenting coordinator to make changes to the judgment for the parties unless specifically authorized by the court. Instead, the court will take reports by parenting coordinators into consideration in issuing judgments. The word "empower" is used throughout the statute and rule in regard to a parenting coordinator's actions. Idaho Rule of Civil Procedure 16(l)(1) does state that the parenting coordinator "will make decisions or recommendations as may be appropriate when the parties are unable to do so," but this language was not intended to give a parenting coordinator judicial powers of decision-making. The goal of a parenting coordinator is to empower the parties and minimize conflict in resolving parenting disputes. The judicial function of final decision-maker remains with the court and is not delegated through I.C. § 32-717D or I.R.C.P. 16(l)(1).

Therefore, while we find that Sahlin acted without any specific authority in making recommendations and decisions regarding the parties' custody issues, we also find that I.C. § 32-717D(3) and I.R.C.P. 16(l)(1) grant a parenting coordinator a general authority to take actions that empower the parties to engage in effective parenting. We therefore remand for a determination as to whether any of Sahlin's actions fell within the general grant of authority of I.C. § 32-717D(3) and I.R.C.P. 16(l)(1). Likewise, the statute and rule do not empower the parenting coordinator to intervene in disputes that do not involve parenting. The parents can request the coordinator's assistance in resolving such other disputes, but the coordinator is not entitled to compensation for helping to resolve those disputes unless the parents have requested that assistance.

### III. CONCLUSION

We vacate the district court's order affirming the magistrate court's judgment ordering Hausladen to pay for Sahlin's services and remand for a determination as to whether Sahlin is

entitled to payment pursuant to I.C. § 32-717D(3) and I.R.C.P. 16(l)(1).  Neither party requests attorney fees on appeal.    Costs to Hausladen.

Chief Justice EISMANN and Justices J. JONES, W. JONES and HORTON, **CONCUR.**