IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 40966

| | | |
|---|---|---|
| MEDICAL RECOVERY SERVICES, LLC, | ) | Boise, February 2014 Term |
| | ) | |
| Plaintiff-Respondent, | ) | 2014 Opinion No. 85 |
| v. | ) | |
| | ) | Filed: August 21, 2014 |
| BONNEVILLE BILLING AND | ) | |
| COLLECTIONS, INC., | ) | Stephen Kenyon, Clerk |
| | ) | |
| Defendant-Appellant. | ) | SUBSTITUTE OPINION, THE |
| | ) | COURT'S PRIOR OPINION |
| | ) | DATED AUGUST 1, 2014 IS |
| | ) | HEREBY WITHDRAWN |
| | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Hon. Dane H. Watkins, Jr., District Judge. Hon. Linda J. Cook, Magistrate Judge.

The district court's decision on intermediate appeal is <u>reversed.</u> This case is <u>remanded</u> to the district court with instructions.

Todd R. Erikson, P.A., Idaho Falls, for appellant. Todd Erikson argued.

Smith, Driscoll & Associates, PLLC, Idaho Falls, for respondent. Bryan N. Zollinger argued.

_____

HORTON, Justice.

This is an appeal from the district court sitting in its appellate capacity and comes before this Court on review from the Idaho Court of Appeals. We reverse the decision of the district court and remand with instructions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is a dispute between two collections agencies, Medical Recovery Services, LLC (MRS) and Bonneville Billing and Collections, Inc. (BBC), who both had outstanding accounts relating to the same debtor, Stacie Christ. On June 4, 2008, MRS obtained a judgment against Christ for $1,868. MRS then obtained an order for continuing garnishment on June 12, 2008. The garnishment order instructed the Bonneville County Sheriff to garnish Christ's wages at her

1

place of employment, Western States Equipment Company (WSEC), until the judgment, plus interest, was satisfied. On June 18, 2008, MRS obtained a writ of execution requiring the Bonneville County Sheriff to collect on MRS' judgment. On the same day, the Bonneville County Sheriff served WSEC, the garnishee, with the writ. WSEC returned an acknowledgement of receipt of garnishment to the Bonneville County Sheriff on June 23, 2008.

WSEC intended to make the first payment on the continuing garnishment on July 10, 2008. However, an employee in WSEC's payroll department, instead of selecting "BCS," for Bonneville County Sheriff, on a computer dropdown menu, inadvertently selected "BBC" and sent the first payment of $331.00 to BBC. WSEC repeated the same mistake on two subsequent occasions and sent checks for $394.83 and $357.38 to BBC instead of the Bonneville County Sheriff.

BBC had been assigned two accounts involving Christ as the debtor. The first account was assigned on May 7, 2007, in the amount of $325.50. BBC filed a complaint in connection with this account on May 8, 2008, but did not obtain a judgment. The second account was assigned on April 24, 2008, in the amount of $966.86, and BBC had not yet initiated legal efforts to collect on this account.

Due to WSEC's payroll mistake, BBC received three checks from WSEC: $331.00 on July 22, 2008; $394.83 on July 28, 2008; and $357.38 on August 12, 2008. In total, WSEC mistakenly sent BBC $1,083.21, which BBC applied to Christ's outstanding accounts.

On August 20, 2008, MRS received a letter from the Bonneville County Sheriff alerting MRS to WSEC's errors. The letter indicated that WSEC had also notified BBC of the error but that BBC refused to return the money. After learning of WSEC's payroll mistake, MRS contacted WSEC and instructed WSEC to discontinue the garnishment.

MRS sent BBC a demand letter on August 21, 2008, asking for a return of the $1,083.21. BBC responded on August 28, 2008. In that response, BBC acknowledged receiving the checks and stated that it intended to keep the funds since Christ owed on accounts held by BBC. BBC further indicated that, at the time the checks were received, it believed that the funds resulted from wage assignments that Christ had voluntarily initiated to pay her debts.

On September 18, 2008, MRS filed a complaint against BBC alleging conversion, unjust enrichment, and requesting a constructive trust over the disputed funds in the amount of $1,083.21. Both parties moved for summary judgment. The magistrate court denied MRS'

motion, granted BBC's motion, and awarded BBC attorney fees and costs in the amount of $10,658. On May 3, 2011, MRS appealed to the district court. The district court reversed the magistrate court's judgment and: (1) granted MRS summary judgment on the issues of unjust enrichment and conversion; (2) imposed a constructive trust in favor of MRS over the disputed $1,083.21; (3) vacated the magistrate court's order granting BBC attorney fees and costs; (4) remanded the matter to determine a pre-appeal attorney fee award for MRS; and (5) granted MRS attorney fees on appeal.

BBC timely appealed from the decision of the district court on November 17, 2011, and the matter was heard by the Court of Appeals. On January 18, 2013, the Court of Appeals reversed the decision of the district court and reinstated the magistrate court's award of attorney fees. This Court granted MRS' subsequent petition for review.

## II. STANDARD OF REVIEW

> "In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court." *State v. Oliver*, 144 Idaho 722, 724, 170 P.3d 387, 389 (2007). "On appeal of a decision rendered by a district court while acting in its intermediate appellate capacity, this Court directly reviews the district court's decision." *In re Doe*, 147 Idaho 243, 248, 207 P.3d 974, 979 (2009). However, to determine whether there was an abuse of discretion, we independently review the record. *Id.* If the magistrate court's findings of fact are supported by substantial and competent evidence and the conclusions of law follow from the findings of fact, and if the district court affirmed the magistrate's decision, we will affirm the district court's decision. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008).

*Hausladen v. Knoche*, 149 Idaho 449, 451–52, 235 P.3d 399, 401–02 (2010).

## III. ANALYSIS

### A.  The district court erred in finding that BBC was unjustly enriched by MRS.

Below, the magistrate court stated: "In the instant case, [MRS] conferred no benefit on [BBC] because [MRS] had no benefit to confer." The district court disagreed and concluded that BBC had been unjustly enriched by MRS. The district court stated: "Absent the writ procured by MRS … the disputed funds would have been delivered to … Christ and would not have been sent to BBC."

"Unjust enrichment occurs where a defendant receives a benefit which would be inequitable to retain without compensating the plaintiff to the extent that retention is unjust."

3

*Vanderford Co. v. Knudson*, 144 Idaho 547, 557, 165 P.3d 261, 271 (2007) (citing *Beco Constr. Co. v. Bannock Paving Co.*, 118 Idaho 463, 466, 797 P.2d 863, 866 (1990)). A prima facie case for unjust enrichment exists where: "(1) there was a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof." *Stevenson v. Windermere Real Estate/Capital Grp., Inc.*, 152 Idaho 824, 827, 275 P.3d 839, 842 (2012) (quoting *Vanderford Co.*, 144 Idaho at 558, 165 P.3d at 272). "A person confers a benefit upon another if he or she gives the other some interest in money, land, or possessions, performs services beneficial to or at the request of the other, satisfies the debt of the other, or in any other way adds to the other's advantage." 42 C.J.S. *Implied Contracts* § 9 (2013).

BBC was not unjustly enriched by MRS because MRS did not confer any benefit on BBC; thus, MRS cannot maintain a claim for unjust enrichment. On appeal, MRS argues that it has conferred a benefit on BBC "by filing suit, obtaining a judgment, and garnishing wages from … Christ on whom [BBC] had a collection account and from whose employer [BBC] serendipitously received three checks." Conversely, BBC argues that MRS has not conferred any benefit on BBC. BBC asserts that it was not the conduct of MRS that resulted in BBC receiving the disputed checks; it was the mistake of WSEC. We agree. MRS' claim that it unjustly enriched BBC is without merit because MRS has not conferred any benefit on BBC and therefore has failed to satisfy the first element of unjust enrichment.

We have discussed what constitutes conferring a benefit in the context of an unjust enrichment claim at length in previous cases. The decisions of particular relevance to this appeal are *Stevenson* and *Beco*.

In *Stevenson*, the Stevensons wished to purchase a condominium from seller, Jefferson. 152 Idaho at 825, 275 P.3d at 840. The Stevensons and Jefferson executed a purchase agreement and the Stevensons deposited $38,000 in earnest money with Jefferson's broker, Windermere, which Windermere released to Jefferson upon receiving authorization. *Id*. Jefferson then paid Windermere a $9,500 commission based on a separate agreement which obligated Jefferson to pay Windermere whenever it procured a ready, willing, and able purchaser. *Id*. The deal went bad; Jefferson decided not to sell and did not return the Stevensons' earnest money. *Id*. The Stevensons filed suit against Windermere and Jefferson claiming unjust enrichment but settled

4

with Jefferson when it agreed to refund the Stevensons' earnest money, less the $9,500 commission paid to Windermere. *Id*. at 826, 275 P.3d at 841. This Court summarized the Stevensons' unjust enrichment claim as follows: "It is true that Jefferson conferred a benefit on Windermere. The Stevensons' argument, reduced to its essence, is that because they conferred a benefit upon Jefferson, and Jefferson conferred a benefit upon Windermere, they can cut out the middleman and directly recover from Windermere for unjust enrichment." *Id*. at 827, 275 P.3d at 842. Ultimately, we concluded that the Stevensons' unjust enrichment claim against Windermere could not be maintained because Jefferson conferred the $9,500 benefit on Windermere and thus, it was "not a benefit that the Stevensons conferred on Windermere." *Id*. at 829, 275 P.3d at 844. Further, we expressly stated: "We are unwilling to expand the doctrine of unjust enrichment to the extent advocated by the Stevensons." *Id*.

Similarly, in *Beco*, we concluded that the plaintiff failed to confer any benefit on the defendant. Beco was the second lowest bidder on a paving construction project. 118 Idaho at 464, 797 P.2d at 864. Beco claimed that the low bidder, Bannock Paving, was not a qualified bidder and unsuccessfully pursued administrative relief in federal court. *Id*. Beco then brought an action for unjust enrichment against Bannock Paving in state court. *Id.* On appeal to this Court from a grant of summary judgment in favor of Bannock Paving, Beco framed the issue as: "Can Beco recover a benefit which it did not personally convey to Bannock Paving" on an unjust enrichment theory. *Id*. at 466, n.2, 797 P.2d at 866, n.2. The *Beco* Court noted that recovery under an unjust enrichment theory requires one party, the plaintiff, to give some benefit to the other party, the defendant. *Id*. at 467, 797 P.2d at 867. With that in mind, this Court noted that "Beco conferred no direct or indirect benefit on Bannock Paving." *Id*. Accordingly, we held Beco's claim was without merit and stated: "This court continues to require for an unjust enrichment recovery that the plaintiff confer some benefit on the defendant which would be unjust for the defendant to retain." *Id*.

Here, like the plaintiffs in both *Stevenson* and *Beco*, MRS has not conferred any direct benefit on BBC. To confer a benefit in the context of unjust enrichment, the plaintiff must give the defendant an interest in money, land, or possessions, or perform services beneficial to, or at the request of, the other. S*ee* 42 C.J.S. *Implied Contracts* § 9. MRS has done none of these things for the benefit of BBC. The benefit enjoyed by BBC in this case, funds from three checks totaling $1,083.21, was conferred on BBC by WSEC because WSEC sent the checks. In this

5

respect, MRS' argument is very similar to the plaintiff's argument in *Beco*, who argued it could recover on an unjust enrichment theory for a benefit it did not directly confer. It is also similar to the plaintiffs' argument in *Stevenson* that Windermere's benefit resulted from a benefit they conferred on Jefferson. We rejected both those arguments. Likewise, we reject MRS' argument in this case.

It is also worth noting that this case includes an additional fact rendering MRS' conduct and the benefit received by BBC even less direct than the situations we considered in *Stevenson* and *Beco*: mistake. Mistake on the part of WSEC, not a party to this case, is the source of the benefit to BBC. Distilled to its essence, MRS' position is that this Court should abandon the requirement that the party claiming unjust enrichment "confer a benefit" in favor of a "but for causation" test. It is true that, but for MRS' writ of garnishment, BBC would not have received the disputed checks in this matter. However, "but for causation" is not the standard applied by this Court in its unjust enrichment jurisprudence. Otherwise, the plaintiff in *Stevenson* would have prevailed because, but for the Stevensons entering into a land sale agreement with Jefferson, Windermere would not have received its commission.

The benefit that BBC enjoyed was not the writ of continuing garnishment that MRS took the effort to procure; it was money in the form of three checks drawn on WSEC's account that were *accidentally* sent by WSEC to BBC. It was not the effort of MRS in obtaining the writ that conferred the benefit; it was ultimately WSEC's mistake that resulted in the benefit. Thus, MRS has not conferred a benefit on BBC and cannot recover under a theory of unjust enrichment.

**B. The district court erred in finding that BBC converted MRS' property.**

The magistrate court held that the writ of continuing garnishment served on WSEC did not give MRS an ownership interest in the garnished property, only a lien; thus, MRS' claim for conversion was without merit. The district court concluded that the magistrate court erred in holding that BBC did not convert MRS' property. Unlike the magistrate court, the district court believed that MRS could maintain its conversion claim if it had a lien interest coupled with the right to possession. Further, because MRS had properly served WSEC with a writ of continuing garnishment, the district court concluded that MRS had both a lien interest and a right to possession. Accordingly, the district court entered summary judgment in favor of MRS on the issue of conversion.

6

"Generally, conversion is defined as a distinct act of dominion wrongfully asserted over another's personal property in denial of or inconsistent with [his] rights therein." *Carpenter v. Turrell*, 148 Idaho 645, 650, 227 P.3d 575, 580 (2010) (quoting *Peasley Transfer & Storage Co. v. Smith*, 132 Idaho 732, 743, 979 P.2d 605, 616 (1999)). "In other words, conversion is a dealing by a person with chattels not belonging to him, in a manner inconsistent with the rights of the owner." *Carver v. Ketchum*, 53 Idaho 595, 601, 26 P.2d 139, 141 (1933). "This definition can be broken down into three elements which are required for a claim of conversion to be valid: (1) that the charged party wrongfully gained dominion of property; (2) that property is owned or possessed by plaintiff at the time of possession; and (3) the property in question is personal property." *Taylor v. McNichols*, 149 Idaho 826, 846, 243 P.3d 642, 662 (2010).

BBC did not convert MRS' property because the property alleged to have been converted in this case, funds drawn on WSEC's general bank account, cannot be the subject of a conversion action. "Personal property" is "[a]ny movable or intangible thing that is subject to ownership and not classified as real property." BLACK'S LAW DICTIONARY 1337 (9th ed. 2009). Many courts have limited conversion actions to tangible personal property because conversion, as a cause of action, is "based on the theory that the property converted was findable;" i.e. tangible. Val D. Ricks, *The Conversion of Intangible Property: Bursting the Ancient Trover Bottle with New Wine*, 1991 B.Y.U. L. REV. 1681, 1699 (1991).

Whether a conversion claim cannot be made with respect to intangible property is not an issue in this case because it is commonly held that "[a] check may be the subject of conversion." 44 A.L.R.2d 927 § 2. Likewise, specifically identifiable monies can also be the subject of a conversion claim. *See Warm Springs Props., Inc. v. Andora Villa, Inc.*, 96 Idaho 270, 272, 526 P.2d 1106, 1108 (1974). However, this Court has expressly held that "conversion for misappropriation of money does not lie unless it can be described or identified as a specific chattel." *Id.*

In *Warm Springs*, two companies, Warm Springs Properties, Inc. and Andora Villa, Inc., by separate and individual agreements, contracted with Butler Brothers to construct independent condominium projects. 96 Idaho at 271, 526 P.2d at 1107. Each project was to be financed by progress payments made by Warm Springs and Andora to Butler. *Id.* Warm Springs paid $60,000 to Butler with the understanding that the funds were to be used for the sole purpose of paying expenses incurred on the Warm Springs condominium. *Id.* During this same time period,

Andora failed to make payments to Butler, yet work on the Andora project continued. *Id.* Believing that its funds had been misappropriated for use on the Andora project, Warm Springs brought suit against Andora for conversion. *Id.* This Court found no merit in Warm Springs' conversion argument and stated: "From the undisputed facts in this record, appellant Warm Springs is foreclosed from maintaining this action on the theory of conversion because once the funds were received by Butler Brothers they went into its general checking account and lost any specific identity." *Id.* at 272, 526 P.2d at 1108.

In this case, MRS is alleging conversion of monies represented by three checks drawn from WSEC's general checking account.[1] However, the funds that MRS argues BBC has converted have no specific identity. The record indicates that the checks were drawn on WSEC's general bank account after the monies were withheld from Christ's earnings. MRS has offered no evidence, or made any effort to trace the garnished money, to establish its character as specific chattel. Nor has MRS offered any evidence of WSEC's general garnishment practices that would allow this Court to find that the funds in BBC's possession were specific funds withheld from Christ's earnings. Although the checks themselves are tangible property and may represent specific chattels,[2] the funds the checks represent are not. Like the funds in *Warm Springs* that lost their specific character after passing through Butler's general bank account, the funds in this case also lost whatever specific identity they may have once had when they were comingled in WSEC's general checking account. Accordingly, MRS may not maintain its claim of conversion because the funds at issue have no specific identity.[3]

## C. The district court erred in imposing a constructive trust.

"[A] constructive trust arises when one who holds title to property is subject to an equitable duty to convey the property to another in order to prevent unjust enrichment." *Andre v.*

---

[1] Specifically, MRS' complaint states: "[MRS] was the legal owner and had the right of possession to the checks that were inadvertently sent to the defendant. The property is described as: (1) [WSEC] check no. 0708908235 for the amount of $331.00; (2) [WSEC] check no. 0708971963 for the amount of $394.83; (3) [WSEC] check no. 080836464 for the amount of $357.38." Based on this language, it appears that MRS was stating a conversion claim for the three checks themselves. However, at oral argument MRS clarified that it was seeking the *funds* associated with the three checks mistakenly sent to BBC.

[2] *See Capitol Indem. Corp. v. Citizens Nat. Bank of Fort Scott, N.A.*, 8 S.W.3d 893, 900 (Mo. Ct. App. 2000) ("Specific checks, drafts or notes will support a cause of action for conversion where they can be described or identified as a specific chattel.").

[3] We note that the conversion elements set out by this Court in *Taylor* are conjunctive. *See* 149 Idaho at 846, 243 P.3d at 662. We have chosen to address the third element in this case because it was clearly not satisfied. However, this opinion should not be read as implicitly finding elements one and two satisfied. Rather, they have simply not been addressed.

8

*Morrow*, 106 Idaho 455, 461, 680 P.2d 1355, 1361 (1984) (citing *Rowe v. Burrup*, 95 Idaho 747, 750, 518 P.2d 1386, 1389 (1974)).

In this case, because MRS did not unjustly enrich BBC, the district court erred in imposing a constructive trust in favor of MRS. Accordingly, the district court's order imposing a constructive trust is vacated.

## D. Attorney fees.

The magistrate court awarded BBC $10,658.00 in attorney fees and costs pursuant to Idaho Code section 12-120(1). The district court reversed this award after concluding that BBC was not the prevailing party and remanded the matter in order for the magistrate court to calculate a reasonable pre-appeal attorney fee award for MRS. Additionally, the district court awarded MRS attorney fees on intermediate appeal pursuant to Idaho Code section 12-120(1).

Idaho Code section 12-120 provides:

> [I]n any action where the amount pleaded is thirty-five thousand dollars ($35,000) or less, there shall be taxed and allowed to the prevailing party, as part of the costs of the action, a reasonable amount to be fixed by the court as attorney's fees. For the plaintiff to be awarded attorney's fees, for the prosecution of the action, written demand for the payment of such claim must have been made on the defendant not less than ten (10) days before the commencement of the action.

I.C § 12-120(1).[4] "For I.C. § 12-120(1) to apply, the pleading must specifically allege that the amount pleaded does not exceed $35,000." *Keybank Nat'l Ass'n v. PAL I, LLC*, 155 Idaho 287, __, 311 P.3d 299, 309 (2013) (citing *Mickelsen v. Broadway Ford, Inc.*, 153 Idaho 149, 156, 280 P.3d 176, 183 (2012)). Additionally, "I.C. § 12-120(1) 'requires the defendant to be notified of the plaintiff's claim against defendant for at least ten days before a complaint can even be filed.'" *Id.* (quoting *Cox v. Mueller*, 125 Idaho 734, 737, 874 P.2d 545, 548 (1994)). Where the terms of I.C. § 12-120(1) have been satisfied it "mandates an award of attorney fees to the prevailing party on appeal as well as at trial." *Id.* (quoting *Chavez v. Barrus*, 146 Idaho 212, 225, 192 P.3d 1036, 1049 (2008)).

### 1. Attorney fees on intermediate appeal before the district court.

---

[4] Although the statutory cap under I.C. § 12-120(1) is currently $35,000, at the time this action originated, September 2008, the statutory cap was $25,000. *See* 2012 Idaho Sess. L. ch. 94, §1, p. 257. Thus, the applicable statutory cap in this case is $25,000. *See Griggs v. Nash*, 116 Idaho 228, 235, 775 P.2d 120, 127 (1989) (statutory amendments are not given retroactive application).

In this case, BBC was the prevailing party at the magistrate court level, making it eligible for attorney fees pursuant to Idaho Code section 12-120(1). The amount pleaded in this case was very clearly $1,083.21, the sum of the three checks mistakenly sent to BBC by WSEC. We note that the notification requirement of Idaho Code section 12-120(1) is not at issue as to BBC in this case because BBC is the defendant. Thus, because BBC was the prevailing party, and the amount pleaded was less than the statutory cap, the district court erred by vacating the magistrate court's award of attorney fees and by ordering the magistrate court to calculate a reasonable pre-appeal attorney fee award for MRS. We vacate the district court's attorney fee award and remand this matter with instructions for the district court to reinstate the magistrate court's award of attorney fees and to determine an appropriate award of attorney fees in favor of BBC related to proceedings before the district court in the intermediate appeal.

**2. Attorney fees on appeal before the Court of Appeals and this Court.**

In this case, BBC is the prevailing party on appeal, making it eligible for attorney fees pursuant to Idaho Code section 12-120(1). Accordingly, we award BBC its attorney fees incurred on appeal before the Court of Appeals and this Court.

## IV. CONCLUSION

The district court's memorandum decision and order holding that BBC converted MRS' property and that BBC was unjustly enriched by MRS is reversed. The district court's order vacating the magistrate court's award of attorney fees is reversed. The district court's orders granting MRS attorney fees and imposing a constructive trust are reversed. We remand this matter to the district court with instructions to reinstate the magistrate court's award of attorney fees in favor of BBC and to determine an appropriate award in favor of BBC for attorney fees incurred in proceedings before the district court on intermediate appeal. We award BBC attorney fees and costs on appeal from the district court.

Chief Justice BURDICK and Justices EISMANN and J. JONES **CONCUR**.

10