# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 51986

NORTH HAVEN BUSINESS PARK, INC., an Idaho Corporation,

Plaintiff-Appellant,

v.

BALANCE REGENERATIVE MEDICINE, PLLC, an Idaho professional limited liability company; ERICA CAMERON, an individual, and JENNIFER GARDNER, an individual,

Defendants-Respondents.

Filed: June 18, 2025

Melanie Gagnepain, Clerk

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Benjamin J. Cluff, District Judge.

Judgment granting dismissal of complaint for breach of contract and unjust enrichment, <u>affirmed</u>.

Lawson Laski Clark, PLLC; Edward A. Lawson and Heather E. O'Leary, Ketchum, for appellant. Heather E. O'Leary argued.

RandsLaw, PLLC; Kirk A. Melton, Twin Falls, for respondents--Balance Regenerative Medicine, PLLC and Erica Cameron. Kirk A. Melton argued.

Wright Brothers Law Office, PLLC; Brooke B. Redmond, Twin Falls, for respondent--Jennifer Gardner. Brooke B. Redmond argued.

LORELLO, Judge

North Haven Business Park, Inc. appeals from the judgment dismissing its complaint for breach of contract and unjust enrichment. We affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a lease agreement between North Haven and Balance Regenerative Medicine, PLLC. Balance Regenerative Medicine is a limited liability company formed by Erica Cameron and Jennifer Gardner (hereinafter, all three parties will be referred to as BRM). North Haven has two board members relevant to this appeal: Gary Slette and Gerald Martens. After seeking a location to operate its newly formed medical practice, BRM chose an unfinished, commercial office space owned by North Haven. In July 2021, North Haven and BRM entered into a lease agreement for the office space. Because the office space was unfinished and BRM was obligated to comply with certain ADA requirements in order to operate as a full-service medical center, the parties agreed that tenant improvements would be constructed according to BRM's needs. The lease included the following provision regarding the improvements:

> 2.      Improvements.
>
> (a) Subject to the provisions of Paragraph 2(c) hereof, the Landlord shall complete tenant improvements (including floor coverings, acoustical ceilings, heating/cooling distribution and controls, electrical distribution from control panel, plumbing fixtures, interior partitions, cabinets, counters, reception desk, break area appliances, paint, wallpaper, wall coverings, interior signage and lighting fixtures) as depicted in Exhibit 2[1] (the Tenant Improvements).
>
> (b) Any work beyond that which is described in Exhibit 2 is the responsibility of Tenant. Any work beyond that which is described on Exhibit 2 and installed by Tenant shall remain on and be surrendered with the Premises on expiration or termination of the Lease.
>
> (c) Tenant shall reimburse Landlord for Tenant Improvements exceeding $60.00 per square foot payable 30 days after issuance of the Certificate of Occupancy. All tenant improvements exceeding the allowance will be submitted to the tenant for approval.

In August 2021, North Haven entered into a real estate purchase and sale agreement (PSA) to sell the office space to Whitten Farms, LLC. During the closing period of the PSA, North Haven continued to make tenant improvements to the office space. A month later, North Haven and Whitten Farms executed an addendum to the PSA, stating BRM was "scheduled to start paying

---

[1]      Exhibit 2 attached to the lease agreement is a blueprint of the building plan which reflects the general layout of the office space that is the subject of the lease.

rent January 1, 2022," upon completion of the tenant improvements. Subsequently, Tony Hughes of Stone Creek Construction joined the project to assist with the office space, tenant improvements. Thereafter, North Haven and Whitten Farms entered into a second addendum to the PSA indicating North Haven agreed to "remain financially responsible to complete" the tenant improvements.

In October 2021, North Haven and Whitten Farms closed on the PSA. On the same day as the closing, North Haven and Whitten Farms executed an assignment of lease, which provides:

ASSIGNMENT OF LEASE

This Assignment of Lease dated October 1st, 2021 between North Haven Business Park, Inc., an Idaho corporation (Assignor) and Whitten Farms, LLC, a California Limited Liability Company (Assignee), is for the assignment of [the lease] between North Haven Business Park, Inc. (Landlord) and Balance Regenerative Medicine, PLLC (Tenant).

In consideration of the Assignor agreeing to assign and the Assignee agreeing to assume the [lease] for the [office space], the aforementioned lease shall become the property of the Assignee effective October 1st, 2021, with all rights, terms and conditions.

Shortly after the assignment of lease was executed, North Haven notified BRM that the office space had been sold to Whitten Farms and that the lease had been assigned and transferred to Whitten Farms. In November 2021, despite selling the office space, North Haven obtained a building permit for the tenant improvements listing North Haven as the owner of the office space. North Haven then resumed constructing the tenant improvements with assistance from Hughes and Stone Creek Construction. The following month, Hughes and Martens met with BRM to discuss the design and plans for the tenant improvements. During the meeting, BRM expressed its concerns over certain design elements in the office space. A few days later, the parties met again and decided to eliminate several of those elements. They also agreed to reduce the number of other fixtures, including sensors, faucets, and eyewash stations in order to lower the overall costs of the tenant improvements. Subsequent meetings followed a similar pattern, with BRM requesting design modifications or reductions to decrease the total costs of the tenant improvements. In February 2022, Cameron contacted Martens to inquire about the remaining balance of the tenant-improvement allowance, the total cost of the project, and the estimated completion date. Despite Martens' response that the contractor was "working on the numbers," BRM alleged it did not receive any estimates for the tenant improvements discussed during the meetings.

3

On March 14, 2022, Martens and Hughes met with Cameron. The details of the meeting were disputed. While Cameron categorically denied being notified of the final costs of the tenant improvements, North Haven maintained that Martens informed Cameron the final cost of the tenant improvements would be $525,000, which exceeded the tenant-improvement allowance by $185,000. As part of discovery, North Haven produced a letter from Martens to his fellow board member, Slette, summarizing his meeting with Cameron. In the letter, Martens indicated the parties discussed the tenant-improvement overages and that there was a dispute between Cameron and Gardner. Martens asked Slette if North Haven should either prepare a written notice to document the meeting with Cameron or put the project on hold until the tenant issue was resolved. The letter further stated that, while Cameron wanted to proceed with the project, she was unwilling to "release Gardner from the lease" and believed an amended lease was unlikely. The parties did not dispute that, a day after the meeting, Slette emailed Hughes to ask whether BRM's tenant-improvement allowance had been exceeded. Hughes responded that, as of March 15, 2022, the total cost for the tenant improvements was $159,279 and remained within the allowance.

In April 2022, Gardner sent Whitten Farms a letter indicating: (1) the BRM tenant-improvement project had not been completed on time; (2) Whitten Farms asked BRM to extend the lease commencement date and to increase the tenant-improvement allowance by $187,000; (3) Gardner had not been involved in any meetings that would have increased the costs; (4) "the Landlord was in breach"; (5) Gardner would not authorize an extension; and (6) Gardner intended on leaving BRM but was unable to do so until the concerns regarding the lease were resolved. Gardner further indicated that she wanted to be released from the personal guaranty included in the lease. Upon receiving the letter, Slette emailed the other North Haven board of directors requesting a conference to discuss how the excess tenant improvements would be covered. Cameron later emailed Whitten Farms and North Haven, confirming her dispute with Gardner. Cameron also affirmed that she and BRM remained committed to the lease.

Upon receiving Cameron's email, Slette once again emailed Hughes asking whether the tenant-improvement allowance had been exceeded. Hughes responded that the total tenant-improvement expenditures at that point totaled $271,992, or $49.69 per square foot, which remained within the $60.00 per square foot tenant-improvement allowance. Slette subsequently emailed the other North Haven board of directors stating that the architecture firm working on the

4

project submitted a bill for $35,000. When the bill was added to the total cost of the project, the balance of the tenant-improvement allowance was under $20,836.94.

In June 2022, BRM sent Slette a letter notifying him that BRM had not received an accounting of the tenant improvements and had not approved any cost overages. BRM requested documentation supporting the cost of the tenant improvements, as well as evidence that it had approved the costs of any tenant improvements exceeding the allowance. In response to BRM's letter, Slette provided the following table[2] of the alleged costs for the tenant improvements:

| Total TI's | $615,440 |
|---|---|
| TI's @ $60 per square foot | $328,440 |
| TI's owed by BRM | $287,000 |

Slette also indicated that, in addition "to the amount of $287,000 now owed by [BRM], the additional sum of $11,000 [was] attributable to the interior design for the [tenant improvements]." This increased BRM's total alleged obligation for tenant-improvement overages to $298,000.

In November 2022, more than a year after North Haven assigned the lease to Whitten Farms, North Haven executed an addendum to the lease assignment and assumption agreement (addendum to the lease assignment). The addendum to the lease assignment states, in relevant part:

> D.    At the time the Lease was assigned to Whitten Farms, it was the understanding and agreement of both parties hereto that the right to recover from [BRM] or its personal guarantors any [tenant-improvement] reimbursement amounts which might become due and owing after completion of the [tenant improvements] would remain exclusively with [North Haven], and the parties hereto desire to herein acknowledge and reaffirm that agreement and understanding.
>
> AGREEMENT
>
> 1.    Whitten Farms hereby assigns unto [North Haven] any and all rights it may otherwise have to pursue [BRM] or the personal guarantors of the Lease for the recovery of any and all the [tenant-improvement] reimbursement amounts for excess [tenant improvements] as provided in paragraph 2(c) of the Lease.

---

[2]    Slette abbreviated "tenant improvements" as "TI's" in the table included in his letter.

In December 2022, North Haven sent BRM a letter demanding $298,000 for the alleged tenant-improvement overages. Two months later, North Haven filed suit, alleging: (1) BRM breached the lease; (2) Cameron and Gardner breached the guaranty included in the lease; and (3) BRM was unjustly enriched. Cameron and Gardner retained separate counsel and responded individually. Specifically, BRM and Cameron filed an answer addressing all three of North Haven's claims, while Gardner filed a separate answer responding to North Haven's first and third claims. Both parties filed motions for summary judgment. The district court held a hearing on the parties' motions and found: (1) North Haven lacked standing to enforce the tenant-improvement reimbursement provision of the lease, and (2) even if North Haven had standing, BRM did not breach the lease because North Haven failed to satisfy a condition precedent contained in the lease, i.e., submission and approval of improvement costs beyond those provided for in the lease agreement. The district court also found that neither Cameron nor Gardner were liable as guarantors and dismissed North Haven's claim of unjust enrichment. Accordingly, the district court granted BRM's motion for summary judgment. North Haven appeals.

## II.

## STANDARD OF REVIEW

We exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986).

## III.

## ANALYSIS

North Haven contends the district court erred in granting BRM's motion for summary judgment. Specifically, North Haven argues that the district court erred in finding North Haven lacked standing to enforce the tenant-improvement reimbursement provision of the lease. North Haven also asserts the district court erred in concluding BRM did not breach the lease and in concluding that North Haven failed to satisfy a condition precedent. Finally, North Haven argues that the district court erred in determining that neither Cameron nor Gardner were liable as guarantors and in dismissing North Haven's unjust-enrichment claim. BRM responds that the district court correctly determined BRM was entitled to summary judgment and that the district court's findings are supported by the record and applicable law. Alternatively, BRM asserts the

6

district court's decision awarding it summary judgment should be affirmed "on the basis that North Haven cannot collect for construction costs because it was not a registered contractor." Both parties request costs and attorney fees on appeal. We hold that the lease is invalid because North Haven failed to register as a contractor. We further hold that North Haven has failed to show the district court erred in granting BRM's motion for summary judgment.

## A.     Idaho Contractor Registration Act

In its motion for summary judgment, BRM argued that North Haven cannot sue for construction costs because BRM was required to register as a contractor under the Idaho Contractor Registration Act (ICRA) but failed to do so. The district court denied this portion of BRM's motion for summary judgment, concluding there was a genuine issue of material fact pertaining to this issue.[3] Because we exercise free review in determining the existence of a genuine issue of material fact, we will address this issue. *See Edwards*, 111 Idaho at 852, 727 P.2d at 1280.

BRM argues North Haven cannot collect for construction costs because it was not a registered contractor as required under Idaho law. According to BRM, North Haven "operated as a contractor and/or manager of the construction project" and, "at the very least, undertook the management" of the tenant improvements. In support of its argument, BRM points to paragraph nine of North Haven's complaint, which asserts that the lease "provided that North Haven would complete certain work related to the tenant improvements at the" office space. By managing construction of the tenant improvements, BRM argues, North Haven became "a contractor by definition" under the ICRA, which precludes North Haven from maintaining this action to recover construction costs as an unregistered contractor. North Haven responds that BRM has failed to

---

[3]     The district court found it was possible the trier of fact could conclude that North Haven's actions fell within the definition of construction manager performing construction-management services but also possible that the trier of fact could determine North Haven merely remained "in the loop" for a project it was financing, similar to a bank or other lender. Although North Haven contends BRM was required to file a cross-appeal for this issue to be considered on appeal, because BRM is not seeking affirmative relief and is instead asking this Court to affirm the district court's award of summary judgment on an alternative basis--a task appellate courts are permitted to perform--a cross-appeal was not required. *See In re Estate of Bagley*, 117 Idaho 1091, 1093, 793 P.2d 1263, 1265 (Ct. App. 1990) (holding that an appellate court may affirm a trial court's decision on a legal theory different from the one applied by that court).

show the district court erred in finding that a genuine issue of material fact exists on this issue. We agree with BRM.

A contract for construction work subject to the requirements of the ICRA is invalid if the contractor is unregistered when the contract is executed because the consideration consists of an act that is contrary to law and public policy. *AED, Inc. v. KDC Invs., LLC*, 155 Idaho 159, 167, 307 P.3d 176, 184 (2013). Under I.C. § 54-5203(3)(b), a contractor includes a construction manager who performs construction-management services. The question this Court must address is whether North Haven was acting as a construction manager at the time the lease was executed such that it was subject to the requirements of the ICRA. In addition to characterizing itself in its complaint as performing the role of a construction manager tasked with completing "certain work related to the tenant improvements," North Haven also agreed to complete tenant improvements under the lease. The lease also indicated that North Haven would "comply with all applicable building codes and applicable federal, state and local laws and regulations." Further, the record shows that North Haven made tenant improvements to the office space both before and after the execution of the PSA and the assignment of the lease between North Haven and Whitten Farms. North Haven also met with BRM on multiple occasions to discuss the design and plans for the tenant improvements. Thus, North Haven was acting as a construction manager--a role which requires registration under the ICRA--making the ICRA statute applicable. Because the ICRA applied to the lease and North Haven was not registered at the time of the lease's formation, the tenant-improvement reimbursement provision of the lease is invalid.

While it is true that the owner of real property is not required to be a registered contractor when hiring construction services under I.C. § 54-5205(2)(k), in this case, North Haven was not the owner of the office space. North Haven and Whitten Farms executed a PSA for the office space during construction of the tenant improvements. Around the same time, North Haven also assigned the lease with BRM to Whitten Farms. Thus, although North Haven obtained a building permit for tenant improvements listing itself as the owner of the office space, the record does not support that assertion. Because the tenant-improvement reimbursement provision of the lease was invalid based on North Haven's failure to comply with the ICRA, North Haven cannot assert a claim for damages arising from an alleged breach. Nonetheless, as discussed below, even if North

8

Haven had a claim for damages that was permitted by statute, it has failed to show it is entitled to relief.

**B.      Summary Judgment**

Summary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). The movant has the burden of showing that no genuine issue of material fact exists. *Stoddart v. Pocatello Sch. Dist. No. 25*, 149 Idaho 679, 683, 239 P.3d 784, 788 (2010). The burden may be met by establishing the absence of evidence on an element that the nonmoving party will be required to prove at trial. *Dunnick v. Elder*, 126 Idaho 308, 311, 882 P.2d 475, 478 (Ct. App. 1994). Such an absence of evidence may be established either by an affirmative showing with the moving party's own evidence or by a review of all the nonmoving party's evidence and the contention that such proof of an element is lacking. *Heath v. Honker's Mini-Mart, Inc.*, 134 Idaho 711, 712, 8 P.3d 1254, 1255 (Ct. App. 2000). Once such an absence of evidence has been established, the burden then shifts to the party opposing the motion to show, via further depositions, discovery responses or affidavits, that there is indeed a genuine issue for trial or to offer a valid justification for the failure to do so under I.R.C.P. 56(d). *Sanders v. Kuna Joint Sch. Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App. 1994). Disputed facts and reasonable inferences are construed in favor of the nonmoving party. *Castorena v. Gen. Elec.*, 149 Idaho 609, 613, 238 P.3d 209, 213 (2010). This Court freely reviews issues of law. *Cole v. Kunzler*, 115 Idaho 552, 555, 768 P.2d 815, 818 (Ct. App. 1989).

The district court granted BRM's motion for summary judgment after it determined that North Haven lacked standing to sue BRM to recover the alleged tenant-improvement overages. Even if North Haven had standing, the district court found that BRM did not breach the lease. Finally, the district court concluded that neither Cameron nor Gardner were liable as guarantors for the lease and that North Haven failed to establish its claim of unjust enrichment. North Haven challenges each of these findings on appeal. We address each argument in turn.

**1.      Standing**

Idaho has adopted the constitutionally based federal justiciability standard. *Pasley v. A&B Irrigation Dist.*, 162 Idaho 866, 869, 406 P.3d 878, 881 (2017); *Davidson v. Wright*, 143 Idaho 616, 620, 151 P.3d 812, 816 (2006). An essential element of a justiciable claim is standing.

*Pasley*, 162 Idaho at 869, 406 P.3d at 881. To establish standing, a plaintiff must show: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The injury must be actual or imminent, not conjectural or hypothetical. *Id*.

Under the lease, North Haven was required to complete the tenant improvements to the office space. The lease further provided that BRM was required to reimburse North Haven for tenant improvements exceeding the $60.00 per square foot allowance. However, North Haven subsequently assigned "all rights, terms, and conditions" it had under the lease to Whitten Farms. The district court recognized that North Haven "inexplicably, and notwithstanding the" assignment of lease, subsequently agreed to "remain financially responsible [to Whitten Farms] to complete the [tenant improvements] on the" office space via the second addendum to the PSA. More than a year later, Whitten Farms and North Haven executed an addendum to the lease assignment, wherein Whitten Farms assigned its "right (if any) to recover [tenant-improvement] reimbursement amounts from BRM under the" lease to North Haven. North Haven sought to utilize the provisions of the addendum to the lease assignment executed between Whitten Farms and North Haven as a basis for suing BRM for the cost of the tenant improvements that exceeded the $60.00 per square foot allowance.

The district court determined North Haven lacked standing to sue BRM because North Haven transferred all of its rights (including any cause of action related to the tenant improvements) to Whitten Farms as part of the assignment of lease. According to the district court, the plain language of the assignment of lease expressly assigned the lease to Whitten Farms "as [its] property with all associated rights, terms and conditions." The district court stressed that the language was "completely absolute and unambiguous" and noted the absence of limiting language suggesting North Haven intended to reserve any rights associated with the lease. The district court highlighted a provision in the record where North Haven had "voluntarily agreed to remain financially responsible for the [tenant improvements] made" to the office space. That provision, however, was part of the second addendum to the PSA between North Haven and Whitten Farms. The district court determined that, when this provision was read together with the PSA, it was clear North Haven was agreeing to be financially responsible for the tenant improvements "to fulfill the

10

terms of the" PSA it entered into with Whitten Farms. As a result, the district court found that North Haven was divested of its right to any cause of action against BRM for the tenant improvements following the execution of the assignment of lease with Whitten Farms.

The district court further determined that North Haven's reliance on the addendum to the lease assignment as a basis for suing BRM to recover the costs of the tenant improvements was misplaced. According to the district court, the addendum to the lease assignment assigned to North Haven "an unaccrued cause of action that could only become enforceable should such action accrue in the assignor," Whitten Farms. The district court found that the relevant provision of the addendum to the lease assignment was "very narrowly constructed" and stated that Whitten Farms assigned to North Haven "any and all rights it may otherwise have to pursue [BRM] for the recovery of any and all the [tenant-improvement] reimbursement amounts for excess [tenant improvements] as provided in Paragraph 2(c)" of the lease. While North Haven sought to rely on this language to sue BRM for breaching the tenant-improvement reimbursement provision on Whitten Farms' behalf, the district court found that North Haven failed to provide evidence that Whitten Farms had "suffered any damage as a result of the alleged breach by" BRM. According to the district court, North Haven's "failure to adduce any evidence that Whitten Farms suffered any damages due to the alleged breach of the [tenant-improvement] reimbursement clause [was] fatal to" its claim because, without demonstrating an injury in fact, North Haven lacked standing to sue. The district court found that North Haven "did not acquire any legal right to bring a claim against [BRM] via the" addendum to the lease assignment. Accordingly, the district court concluded that North Haven lacked standing to pursue a claim against BRM under both the plain language of the lease and the addendum to the lease assignment.

North Haven argues the district court erred when it determined North Haven lacked standing to maintain a cause of action against BRM "because [North Haven] cannot demonstrate that it suffered an injury in fact." According to North Haven, "the standing issue before this Court is whether North Haven suffered an injury in fact as a result of BRM's failure to pay" for the tenant-improvement overages. However, North Haven's argument misconstrues the record and the district court's findings. Because North Haven assigned its rights under the lease to Whitten Farms, the relevant injury resulting from BRM's alleged breach pertains to Whitten Farms, not North Haven. Whitten Farms could only assign to North Haven its right to recover for injury or

11

damages. In order for North Haven to have standing to pursue legal action against BRM for breaching the tenant-improvement reimbursement provision, North Haven was required to show that Whitten Farms (as the landlord under the lease following the execution of the assignment of lease) suffered an injury as a result of BRM's alleged breach. North Haven failed to do so.

The district court determined that, because North Haven failed to show that Whitten Farms suffered an injury as a result of BRM's alleged breach, North Haven did not have standing to pursue a claim against BRM. North Haven does not challenge the district court's finding that the record is devoid of evidence that Whitten Farms suffered any injury as a result of BRM's alleged breach. Because no evidence was presented showing Whitten Farms paid for tenant-improvement overages that would require BRM to reimburse Whitten Farms, North Haven has not established an injury from BRM's alleged breach. Accordingly, North Haven has failed to show the district court erred when it found North Haven lacked standing to pursue a claim against BRM.

## 2. Breach and condition precedent

Nonperformance by a party of any contractual duty of immediate performance constitutes a breach of contract. *Idaho Power Co. v. Cogeneration Inc.*, 134 Idaho 738, 746, 9 P.3d 1204, 1212 (2000). A breach of contract is a failure, without legal excuse, to perform any promise which forms the whole or part of a contract. *Id.* Under Idaho law a condition precedent is an event not certain to occur, but which must occur, before performance under a contract becomes due. *Dengler v. Hazel Blessinger Fam. Tr.*, 141 Idaho 123, 128, 106 P.3d 449, 454 (2005). A party that is the cause of the failure of a condition precedent cannot take advantage of the failure. *Id*. Additionally, a party that has control over whether a condition precedent occurs must make a reasonable effort to cause the condition to occur. *Id.*

In its complaint, North Haven alleged BRM breached the tenant-improvement reimbursement provision in the lease agreement. Although the district court concluded North Haven lacked standing to pursue this claim, the district court also addressed the merits. The district court determined that the plain language of paragraph 2(c) in the lease agreement is "an unambiguous condition precedent to BRM's performance of reimbursement as a matter of law." Paragraph 2(c) of the lease provides that BRM "shall reimburse [North Haven] for tenant improvements exceeding $60.00 per square foot payable 30 days after issuance of the Certificate

12

of Occupancy.[4] All tenant improvements exceeding the allowance will be submitted to the tenant for approval." The district court defined "approval" as subject to "acceptance or refusal." The district court determined that, when the two sentences of paragraph 2(c) are read together, "it follows that any overages were required to be approved by BRM." As a result, the district court found that the second sentence of paragraph 2(c) qualifies as a condition precedent to BRM's reimbursement requirement.

The district court also found that North Haven failed to produce "a single document or other item of evidence demonstrating that [it] or any other party sought BRM's approval for the $298,000 of [tenant-improvement] overages alleged in the complaint." Similarly, the district court noted that North Haven did not produce "any evidence demonstrating that BRM approved any" of the alleged tenant-improvement overages. The district court highlighted that BRM inquired about the expended tenant-improvement funds in February 2022, to which Martens responded that he spoke with the contractors and that they were "working on the numbers." The district court also acknowledged the June 30, 2022, letter Slette sent to BRM, which responded to its request for a detailed account of all tenant improvements, supporting documentation, and evidence of its approval for tenant improvements exceeding the allowance. Slette's letter contained an alleged summary of the tenant-improvement costs. However, the district court found Slette's letter "only set forth the total [tenant-improvement] costs, minus the [tenant-improvement] allowance, with the resulting amount of $287,000 representing the asserted" overages.[5] The district court noted that Slette's letter "contained no specifics as to what" tenant improvements were actually included, the corresponding costs of each of the tenant improvements, which tenant improvements caused the expenditures to exceed the agreed upon allowance, or which tenant improvements "had been explicitly approved by BRM as required under" the lease. The district court therefore found that

---

[4]     The record shows that the certificate of occupancy was issued on June 29, 2022. North Haven sent its demand letter to BRM on June 30, 2022, and filed suit on February 13, 2023.

[5]     While Slette's letter indicated the total cost of tenant improvements amounted to $287,000, the district court noted that North Haven "submitted a demand of $298,000 to BRM after adding $11,000 that [North Haven] attributed to BRM for" interior design services. It is unclear how interior design services qualify as tenant improvements.

13

North Haven failed to submit "all tenant improvements exceeding the allowance" to BRM for approval and that BRM did not approve any tenant improvements exceeding the allowance.

The district court also disagreed with North Haven's argument that "BRM's conduct during construction [of the tenant improvements] suggested an implied waiver of the condition precedent regarding submission and approval of [tenant-improvement] overages." North Haven argued BRM "had the ability and opportunity to inform [North Haven] not to exceed a certain amount for the overage" but failed to do so. North Haven also asserted it could not present an amount for BRM's approval because "it was 'impossible' to ascertain the overages" due to "the ongoing nature of the" tenant improvements. The district court was unpersuaded and found no evidence in the record indicating BRM intended to waive the condition precedent. Additionally, the district court highlighted that, in making its implied-waiver argument, North Haven "essentially conceded its failure of the condition precedent, as it did not provide any concrete evidence of BRM actually approving particular" tenant improvements or a dollar amount associated with tenant-improvement overages.

North Haven asserts the district court erred in awarding BRM summary judgment on this claim because the district court "injected a new obligation into the lease requiring North Haven to get preapproval of the overages." North Haven's argument is unsupported by the record. The relevant portion of the lease provides that, "all tenant improvements exceeding the allowance shall be submitted to the tenant for approval." Based on the plain language of the lease, North Haven's argument that the district court improperly "injected" a substantive term into the lease requiring North Haven to first gain BRM's approval before implementing any tenant improvements over the agreed-upon allowance is unpersuasive. North Haven also argues the lease is "ambiguous as to when and how approval of the overages was required" because there is no language indicating "how approval must be obtained." That the lease does not provide specific language as to how approval of a condition precedent is to be obtained does not make the requirement of the condition precedent itself ambiguous. The language of the lease is unambiguous and requires all tenant improvements exceeding the $60.00 per square foot allowance to be approved by BRM prior to reimbursement.

North Haven also contends the district court erred in finding that North Haven failed to notify BRM of or obtain its approval for tenant-improvement overages. According to North

14

Haven, the district court "rejected all of [North Haven's] evidence showing that BRM was informed of the anticipated overages." North Haven references the March 14, 2022, meeting that took place between Martens, Hughes, and Cameron as evidence establishing that BRM was aware of and approved the tenant-improvement overages because Martens drafted a letter after the meeting in which he purported to summarize the discussion. Marten wrote: "Final [tenant improvement] is approximately $525,000 or $185,000 over allowance. All partners are aware and wish to move forward."

Contrary to North Haven's argument, the district court did not reject its evidence. The district court noted that, "the only time [North Haven] may have presented any form of [tenant-improvement] overages to BRM was in the March 14, 2022, meeting." The record shows that the district court evaluated the letter and recognized that "what exactly occurred at the meeting is disputed." Despite taking North Haven's version of what occurred as true, the district court determined North Haven failed to establish that BRM knew of and approved any tenant-improvement overages. Specifically, the district court noted that, while the letter asserted "all [BRM] partners are aware and wish to move forward," there was "no dispute that Gardner was not present at the meeting." There was "no evidence Gardner expressed any approval of the [tenant improvements], and Martens present[ed] no evidence on how 'all partners' could approve the [tenant-improvement] overages without being present and informed of the" overages. Additionally, the district court found that no evidence had been submitted "demonstrating that Cameron was authorized to approve any [tenant-improvement] overages on behalf of BRM." Referencing I.C. § 30-25-301(a), the district court indicated that a member of an LLC is not an agent of the limited liability company solely by reason of being a member. The district court determined that, because Gardner was still a member of BRM when the meeting occurred on March 14, 2022, and because Gardner left BRM on or shortly after April 1, 2022, "both Gardner's and Cameron's approval was necessary" for tenant-improvement overages. Because North Haven "submitted no evidence that both members of BRM approved of the alleged March 14, 2022, tenant [-]improvement overage," the district court rejected its claim that all BRM partners were aware of and approved the overages.

Moreover, the district court emphasized that, according to Martens' letter, the total cost of the tenant-improvement overages was $185,000. North Haven, however, "is not suing BRM for

15

excess [tenant-improvement] expenditures of $185,000" but is, instead, seeking $298,000 from BRM. According to the district court, "this alleged representation by [North Haven] of a final [tenant-improvement] overage of $185,000 in March 2022 is a far cry from [its] allegations in the present lawsuit," which the district court determined was "patently false based upon the evidence submitted." The record disproves North Haven's assertion that the district court did not consider the letter. As noted by the district court, the $185,000 was, at best, an estimate. Other evidence shows the amount is not an accurate reflection of excess amounts of tenant improvements either at the time or subsequently. Martens' letter does not create a genuine issue of material fact as to any actual amount of either tenant-improvement overages or BRM's approval of such overages.

Finally, North Haven asserts the district court erred when it found that BRM did not waive the condition precedent requiring North Haven to obtain BRM's approval for any tenant-improvement overages. According to North Haven, the district court "failed to recognize crucial evidence demonstrating that [BRM] is estopped from claiming they are not obligated to pay for the overages." North Haven contends BRM is "estopped from claiming [it] is not obligated to pay for the overages" because North Haven relied on BRM's conduct--specifically its "express instructions to finish the project even though they had not been provided with cost information relating to the [tenant improvements] that" BRM requested--when it continued making tenant improvements to the office space. Because Cameron and BRM were made aware of the anticipated overages at the March 14, 2022, meeting, North Haven argues BRM's behavior following the meeting constitutes waiver of the condition precedent. We disagree.

As noted above, North Haven failed to show the district court erred when it found that BRM was not advised of the tenant-improvement overages during the March 14, 2022, meeting. Further, as noted by the district court, there are several flaws with North Haven's reliance on Martens' letter memorializing the March 14, 2022, meeting as a basis for its waiver argument. First, Martens' statements in his letter were "entirely disproven by subsequent correspondence between [North Haven's] board of directors and Hughes." A day after Martens claims to have advised BRM that the tenant-improvement overage was $185,000 and obtained BRM's approval for said overages, an email between North Haven's board of directors and Hughes "specified that the total project cost as of March 15, 2022, was only $159,279, well below the $60 per square foot" allowance. This correspondence was followed by another email on April 28, 2022, wherein

16

the North Haven board of directors again reached out to Hughes inquiring whether BRM had exceeded the tenant-improvement allowance. Hughes responded that same day, stating that the total tenant-improvement expenditures as of April 28, 2022, "was $271,992, or $49.69 per square foot." As the district court found, even if it assumed that "Cameron was informed of a $185,000.00 dollar [tenant-improvement] overage on March 14, 2022, it is undisputed that such amount was not based on any valid calculation of tenant improvements." Accordingly, the tenant-improvement expenditures "were well below the applicable threshold" following the March 14, 2022, meeting. Consequently, BRM could not have waived its right to approve the overage it was allegedly made aware of because "it would have been impossible for BRM to approve any [tenant-improvement] amounts exceeding the allowance on March 14, 2022."

North Haven also asserts that, "even after the March 14, 2022, meeting, BRM continued to make representations of approval to North Haven." North Haven argues BRM's waiver of the right to approve any tenant-improvement overages was evidenced by the correspondence that took place following the dispute between Cameron and Gardner. On April 4, 2022, Gardner sent an email to Whitten Farms indicating she had not received an accounting of the tenant improvements and that she would not agree to any work continuing on the office space unless she was released from the personal guaranty in the lease. Shortly after Gardner's email, Cameron and BRM contacted Whitten Farms and North Haven indicating that, despite the dispute between Cameron and Gardner, BRM remained committed to the lease. Based on this email, North Haven contends BRM waived its right to approve any tenant-improvement overages. North Haven's argument is unpersuasive. BRM's letter indicating it remained committed to the lease does not establish waiver of its right to approve all tenant-improvement overages. Rather, it was only an indication that BRM intended to lease the space pursuant to the terms of the lease agreement, which terms included BRM's right to approve or disapprove of tenant-improvement expenditures after North Haven submitted the expenditures for review.

North Haven has failed to show the district court erred in finding it failed to comply with the lease's condition precedent requiring BRM's approval for any tenant-improvement overages. North Haven has also failed to show that the district court erred in finding it did not seek BRM's approval for tenant-improvement overages or that BRM did not approve any portion of the alleged

17

$298,000 overages. Finally, North Haven has failed to show the district court erred in determining that BRM did not impliedly waive the condition precedent to its duty to reimburse for overages.

### 3. Guarantors

North Haven asserted that Cameron and Gardner were personal guarantors of the lease under Section 28, which states that all persons signing as personal guarantors "hereby agree to be jointly and severally liable for all obligations, payments or debts herein and by signing this [lease] shall constitute and guaranty such result and, upon default of any provision hereunder, Landlord shall have the option of enforcing this [lease] against the personal guarantor(s)." The district court recognized that Cameron and Gardner signed the lease and that, as a result, they were "liable for the obligations, payments or debts of BRM." However, the district court found that "this liability only arises 'upon default' by BRM." The district court determined that BRM had not defaulted on any provisions of the lease for two reasons. First, the district court referenced its finding that North Haven lacked standing to sue BRM for default. Second, even if North Haven had standing to sue, the district court determined North Haven "failed to comply with a condition precedent to payment of the [tenant-improvement] overages." Because BRM did not default on any obligation or payment under the lease, the district court found that Cameron and Gardner were not liable to North Haven as guarantors. As a result, the district court awarded BRM summary judgment on this count of North Haven's complaint.

North Haven argues that, if this Court finds that North Haven has standing to sue BRM, Cameron and Gardner would be liable as personal guarantors of the lease. Because we hold that the district court did not err in finding that North Haven lacked standing to enforce the tenant-improvement reimbursement provision of the lease, North Haven's argument necessarily fails. Consequently, North Haven has failed to show the district court erred in finding that neither Cameron nor Gardner are individually liable for the obligations, payments, or debts of BRM under the lease.

### 4. Unjust enrichment

Unjust enrichment requires a plaintiff to prove: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without

18

payment to the plaintiff for the value thereof. *Lincoln Land Co., LLC v. LP Broadband, Inc.*, 163 Idaho 105, 109, 408 P.3d 465, 469 (2017).

In its complaint, North Haven alleged BRM was unjustly enriched by the tenant improvements. The district court disagreed after it found that North Haven did not submit "any proof that would support a single element of a cause of action for unjust enrichment against" BRM. The district court found that North Haven did not confer any benefit upon BRM because the improvements it constructed were made to the office space owned by Whitten Farms. The district court noted that North Haven contracted with Whitten Farms "to perform and pay for the improvements on the" office space. As a result, the district court found that the benefit conferred by North Haven was to Whitten Farms. Additionally, the district court determined that BRM "did not appreciate the benefit conferred" by North Haven because BRM neither owned nor took possession of the office space. Finally, the district court found that BRM "did not accept the benefit under circumstances that would be inequitable for [it] to retain the benefit without payment to [North Haven] for the value thereof." The district court concluded that, "simply put, [BRM] did not receive, retain, or accept any benefit by way of the improvements to the" office space. As such, the district court awarded BRM summary judgment on North Haven's unjust-enrichment claim.

North Haven argues the district court erred in finding that it failed to establish any of the elements of its unjust-enrichment claim because "it is clear that North Haven completed the [tenant improvements] pursuant to BRM's specific instructions that it do so." North Haven asserts that it completed the tenant improvements "which were unique to BRM's precise needs to operate its full-service wellness facility." Absent the lease and BRM's requested improvements therein, North Haven argues it "could have implemented the original simplified design which would have been less expensive." It is unclear how the uniqueness of the tenant improvements is relevant to North Haven's unjust-enrichment claim. For purposes of establishing unjust enrichment, North Haven cannot distinguish between tenant improvements included within the $60.00 per square foot allotment contemplated by the lease and any overages related to those improvements. North Haven's argument fails to take into account that it sold the office space and assigned the lease to Whitten Farms. Despite having sold the office space, North Haven agreed to remain financially responsible for constructing the tenant improvements according to BRM's needs as part of the

19

second addendum to the PSA it entered into with Whitten Farms. As a result, the benefit conferred by North Haven, i.e., the tenant improvements, was to Whitten Farms.

North Haven also contends the district court's determination "hinges on the fact that BRM could not have been unjustly enriched purely because it lacked an ownership interest" in the office space. North Haven asserts "the mere fact that Whitten [Farms] owned the [office space] does not negate the benefit that BRM received in the form of its custom requests." Contrary to North Haven's argument, the district court's findings do not hinge on whether BRM owned the office space. Rather, the district court determined that North Haven's unjust-enrichment claim failed because BRM did not receive, appreciate, or accept any benefit by way of the tenant improvements North Haven made to the office space. While North Haven concedes that BRM never owned the office space that was improved, it does not challenge the district court's finding that BRM never took possession of the office space.

North Haven emphasizes that BRM "had the ability to take possession of the [office space] when the [tenant improvements] were completed." As such, North Haven asserts there was nothing preventing BRM "from appreciating the benefit that North Haven spent hundreds of thousands of dollars to confer on them." North Haven's argument is contrary to the applicable law. That BRM could have appreciated any alleged benefit North Haven conferred upon BRM does not establish that it actually appreciated the alleged benefit. Finally, North Haven argues that the facts of this case are similar to *Med. Recovery Serv., LLC v. Bonneville Billing & Collections, Inc*. 157 Idaho 395, 398, 336 P.3d 802, 805 (2014), because "North Haven performed services beneficial to and at the request of" BRM. It is unclear how this case supports North Haven's argument since the Idaho Supreme Court held that no unjust enrichment occurred in that case.

North Haven has failed to show the district court erred when it found that BRM did not receive, retain, or accept any benefit by way of the tenant improvements to the office space. As a result, North Haven has failed to show the district court erred in granting summary judgment in favor of BRM on North Haven's unjust-enrichment claim.

C.     **Costs and Attorney Fees on Appeal**

Both parties request an award of costs and attorney fees on appeal. North Haven claims that, because the district court erred in awarding BRM summary judgment, North Haven is the

prevailing party on appeal and is entitled to an award of costs and attorney fees. Because North Haven is not the prevailing party on appeal, it is not entitled to an award of costs or attorney fees.

The BRM parties argue they are entitled to an award of costs and attorney fees on appeal pursuant to I.A.R. 40 and 41, the terms of the lease, and I.C. §§ 12-120(3) and 12-121. According to BRM, North Haven's appeal is "legally and factually unsupportable (when the facts are viewed chronologically)" and an award of attorney fees is therefore appropriate.

Paragraph 21 of the lease agreement provides: "In the event that Landlord or Tenant shall institute a lawsuit to enforce any rights pursuant to this agreement, the successful party shall be entitled to . . . a reasonable sum as attorney fees and costs of litigation, including reasonable attorney fees and costs incurred in any appeal thereof." As the "successful party" on appeal, BRM is entitled to reasonable costs and attorney fees as provided in the lease agreement. Therefore, we need not address whether BRM would also be entitled to costs and attorney fees under I.C. § 12-121 and I.A.R. 41.

## IV.

## CONCLUSION

North Haven has failed to show the district court erred in granting BRM's motion for summary judgment. Accordingly, the district court's judgment is affirmed. Costs and attorney fees are awarded to the BRM parties on appeal.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.

21